Defendants appeal from a summary judgment in favor of the plaintiffs in a declaratory judgment action seeking construction of a deed. The issue is whether the trial judge erred in concluding that the deed was unambiguous and was thus due to be enforced in accordance with its provisions, as a matter of law.
On April 24, 1967, Noel and Viola Turner executed a deed conveying certain real property to Alabama Gulf Coast, Inc. In this deed, the Turners reserved "all interest in and to all the oil, gas, and minerals on, in, or under" the real property, together with the "full and exclusive right and power to sell, lease, assign, or otherwise dispose" of the mineral rights without the consent of "the Grantee, its successors or assigns." The deed contained the following provision, which forms the basis of this lawsuit:
 "Provided, however, in the event minerals are produced from said lands, the Grantors, their heirs and assigns, shall pay to the Grantee, its successors or assigns, a sum equal to one-half (1/2) of the net proceeds from the sale of such minerals at fair market prices."
The deed stated that this obligation "shall be binding on the Grantors, their heirs, executors, administrators, and assigns, as a covenant and burden running with the aforesaid oil, gas, and mineral rights hereby retained." However, the deed stated that the right of the grantee to one-half of the net proceeds "shall not be construed as a covenant running with said lands . . . so that the subsequent conveyance by the Grantee of said real estate . . . shall in no way effect [sic] or diminish the separate contract rights of the Grantee. . . ." The deed also provided that "the Grantee, its successors and assigns, shall have the right to transfer and assign said contract rights fully and without limitation and without the prior consent of the Grantors, or their heirs, executors, administrators, or assigns. . . ."
Plaintiffs, John W. Turner, et al., are successors in interest to Noel and Viola Turner, the grantors under that 1967 deed; the defendants are successors in interest to the grantee, Alabama Gulf Coast, Inc., by assignment of the contract rights granted in the deed.
The parties dispute the meaning of the above-quoted covenant. Apparently, because of their dispute, the plaintiffs have been unable to lease the minerals. In any event, the plaintiffs instituted this action in July 1985, seeking a judicial declaration of the meaning of the disputed provision. Specifically, the plaintiffs asked the court to declare that the provision conferred upon the defendants a non-participatingroyalty interest, at most, equal to one-half (1/2) of any and all royalty payments received by the plaintiffs upon production of the minerals. One defendant, Joe Pilcher *Page 200 
(for whom the present appellants were later substituted), counterclaimed, asking the court to declare that the disputed provision established a trust relationship between the parties to the deed, the grantors being the trustees to act in the grantee's best interest. The trial judge examined the language of the deed, concluded that it was unambiguous, and construed it in favor of the plaintiffs. He granted summary judgment for the plaintiffs as to both the complaint and the counterclaim.
In the summary judgment order, the trial judge reasoned that the use of the word "produced" in the 1967 deed indicated an intention by the grantors to convey a royalty interest, which he denominated as "non-participating." He noted that both the right to the minerals and the right to lease the mineral rights was exclusively retained by the grantors. He then concluded that the only "proceeds" the grantors would receive on production of the minerals would be any royalties reserved by the grantors, when the minerals were produced. He thus determined that, under the deed, the grantors were not obligated to share with the grantee any lease bonus payments, lease delay rental payments, any other lease payments, or any proceeds from the sale of unproduced minerals. The trial judge refused to impose a trust relationship upon the parties, because the deed did not provide for such a relationship and the trial judge found none implied by law.
Only four defendants appeal from the adverse summary judgment. (Many defendants, successors in interest to the grantee, appeared in the action.)
We affirm. In doing so, we deem it unnecessary to denominate the defendants' rights under the deed as anything other than the label used by the parties in the deed: "contract rights."
While the language in the 1967 deed could have been clearer, we find that it is not ambiguous. The grantors reserved all rights in and to the mineral estate. They also explicitly reserved the "full and exclusive . . . power to lease" the mineral rights without the consent of the grantee (emphasis supplied). "The power to lease is the right to transfer the development rights of the mineral estate to another." R. Hemingway, The Law of Oil and Gas 34 (2d ed. 1983). Plaintiffs, as successors in interest to the grantors, are entitled to the benefits accompanying this leasing power (i.e., lease bonus payments and lease delay payments[1]), unless the grantors relinquished their right to those benefits by the language in the deed.
We hold that they did not. The deed plainly states that plaintiffs' obligation under the deed is triggered by the occurrence of one event, that event being production of the minerals. When minerals have been "produced," the defendants are entitled to one-half of the net proceeds received by the plaintiffs from the sale of those produced minerals.
Defendants claim they are entitled to share in the lease bonus payments. Lease bonus payments are consideration for an action occurring before the production of any minerals, i.e., the execution of a lease. Indeed, the lease is granted for the very purpose of making production (by the lessee) possible. Thus, plaintiffs are not obligated to share with defendants any bonus payments they receive as consideration for the execution
of a lease, even if those payments are actually paid out of the lessee's production proceeds.
Likewise, defendants are not entitled to share in delay rentals received by the plaintiffs. Delay rentals are made for the very "purpose of delaying the commencement" of production. R. Hemingway, supra, at 48. Thus, at the time of such payments, no production has ensued; therefore, defendants are not entitled to share in delay rentals.
The trial judge also correctly concluded that the plaintiffs are not entitled to share in the proceeds from the sale ofunproduced minerals. The grantors specifically *Page 201 
reserved their right to transfer their interest in the mineral rights by a sale of the mineral estate. Defendants are entitled to share only in the proceeds of produced minerals.
If plaintiffs choose to lease their right to produce the minerals to another, the only "proceeds" from the sale ofproduced minerals that the plaintiffs would receive would be any royalty the plaintiffs might reserve under such a lease. Royalty is "the [mineral owner's] share in production, free of expenses of production." (Emphasis supplied.) H. Williams and C. Meyers, Oil and Gas Terms 770 (6th ed. 1984).
Having upheld the trial court's determination that the deed was not ambiguous, we also uphold the trial court's refusal to declare that the deed created a trust relationship between the parties. The deed itself does not create an express trust. Nor can a trust be implied in this case. "The phrase `implied trust' is usually employed in American legal terminology to mean either a resulting trust or a constructive trust," G. Bogert, Trusts § 71 (6th ed. 1987), neither of which, by definition, is appropriate in the instant situation. SeeRestatement (Second) of Trusts §§ 1 (e) and 404 (1957).
The defendants cite only one case, McCall v. Nettles,251 Ala. 349, 37 So.2d 635 (1948), to support their contention that the deed creates a trust relationship between the parties. However, a close examination of that case reveals that the statements upon which the defendants rely are mere dicta.
We hold that the deed itself protects the defendants without the imposition of any fiduciary duties upon the plaintiffs. The defendants are concerned that the plaintiffs, by negotiation with a lessee, could obtain higher bonus payments in exchange for a lower royalty rate, thus diminishing the defendants' possible return on minerals "produced." However, the deed expressly provides that the "sale" of the "produced" minerals must be at "fair market prices." Thus, plaintiffs are obligated to lease the production right to their minerals at "fair market prices." Any deviation from their obligation could constitute a violation of the defendants' contract rights.
We have considered other arguments presented by the defendants and find them to be without merit. The judgment is, therefore, due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, BEATTY and HOUSTON, JJ., concur.
[1] Bonus is the "consideration paid by the lessee for the execution of an oil and gas lease by a landowner." H. Williams and C. Meyers, supra, at 80. Delay rentals are paid "by the lessee for the purpose of delaying the commencement" of production. R. Hemingway, supra, at 48.